# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

RICHARD HICKS and )
JOCELYN HICKS, )
                )
       Plaintiffs, )
                )
v. )           CV421-003
                )
GREGORY MIDDLETON, *et al.*, )
                )
       Defendants. )

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is plaintiffs' Amended Motion for Leave to File an Amended Complaint. *See* doc. 37. The Court dismissed the plaintiffs' previous motion to amend their complaint on the grounds that the proposed amendment implicated this Court's diversity jurisdiction and the proposed amended claims were not sufficiently clear for the Court to conduct the appropriate analysis. *See* doc. 36 at 4-10. The amended motion addresses those concerns. *See* doc. 37. Defendants oppose the motion. Doc. 42. Plaintiffs filed a reply, doc. 46, and defendant filed a sur-reply, doc. 48. The motion is, therefore, ripe for disposition.

## BACKGROUND[1]

This case was initially filed in the State Court of Chatham County. *See* doc. 1.  Plaintiff Richard Hicks, a longshoreman, was working at the Port of Savannah on November 7, 2020, when he was struck by a pickup truck driven by defendant Gregory Middleton.[2]  Doc. 1-1 at 7–8.  Hicks suffered a fractured skull, a broken "neckbone," and a dislocated shoulder.  *Id.* at 8.  Middleton refused a drug test at the scene, although plaintiff alleges that he "reeked" of unspecified drugs and alcohol.  *Id.*  Plaintiff asserts that his head injuries are permanent.  *Id.*  He sued Middleton and his employer, Defendant Marine Terminals Corporation—East, d/b/a Ports America ("Ports America"), which he asserts is liable for punitive damages.  *Id.* at 10.  Plaintiff also sued an unnamed John Doe, who he alleged provided "intoxicants" to Middleton.  *Id.* at 7.

The case was removed to this Court on January 6, 2021.  Doc. 1.  The parties conducted a Rule 26(f) planning meeting on January 26, 2021, doc. 19 at 1, and a scheduling order was entered, doc. 20.  The

---

[1] The description of the factual background is taken *verbatim* from the Court's prior Order dismissing the first Motion to Amend.  Doc. 36 at 1-3.

[2] Plaintiff Jocelyn Hicks' claims are for loss of consortium resulting from Plaintiff Richard Hicks alleged injury.  *See* doc. 1-1 at 9.

scheduling order imposed a March 12, 2021 deadline for filing amended pleadings. Doc. 20. On March 11, 2021, plaintiff filed a motion seeking to modify the scheduling order, ostensibly to allow him to conduct discovery which he believed might require the joinder of the Georgia Ports Authority ("GPA"). Doc. 21 at 2. Plaintiff noted that—before he could join GPA as a defendant—he would need to serve an *ante litem* notice and wait a 90-day statutory period. Doc. 21 at 2. One day later, plaintiff filed a motion for leave to file an amended complaint and to join parties. Doc. 22. Plaintiff repeated the same allegations contained in the motion to amend, but made it clear that he believed GPA had liability because of a video indicating that GPA allowed defendant Middleton to drive onto its facility while intoxicated. *See generally* doc. 22.

The instant motion contends that plaintiffs obtained new evidence that supports a claim that GPA knew or should have known that Middleton was dangerously intoxicated when he passed through GPA's security. *See* doc. 37 at 2-3. More specifically, plaintiffs contend that new evidence showed "Middleton was *noticeably* intoxicated . . . *before* the time he entered the Georgia Ports Authority . . . manned gates," and that the evidence supports a contention that an odor of burnt marijuana was

noticeably emanating from his vehicle at the time he passed through the gates.  *Id.* at 3-4.  Based on that information, plaintiffs propose to allege two claims, one for negligence and one based on premises liability under Georgia law, against GPA.  *See generally* doc. 37-1 (Proposed First Amended Complaint).  Ports America opposes the motion on the grounds that plaintiffs' motion is an attempt to destroy the Court's jurisdiction, resulting in remand to the state court, based on information that they possessed at the inception of the case.  *See, e.g.,* doc. 42 at 2.

## ANALYSIS

The Eleventh Circuit has explained that:

> In most cases the Federal Rules of Civil Procedure liberally allow a plaintiff to join a new defendant.  Rule 15(a) of the Federal Rules of Civil Procedure provides that courts 'should freely give leave' to amend 'when justice so requires,' and Rule 20 permits joinder of proper parties.  [Cit.]  But a district court must scrutinize more closely an amended pleading that would name a new nondiverse defendant in a removed case because justice requires that the district court also balance the defendant's interests in maintaining the federal forum.

*Dever v. Family Dollar Stores of Georgia, LLC*, 755 F. App'x 866, 869 (11th Cir. 2018).  The Court of Appeals identified four factors bearing on whether amendment should be permitted: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether

4

the plaintiff has been dilatory in asking for amendment, [3] whether the plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Id.* (quotation marks, alterations, and citation omitted). "In general, a district court has broad discretion in weighing the factors to decide whether to permit or deny an amendment." *Id.* This Court has recently applied the *Dever* test in evaluating a diversity-destroying amendment. *See Butler as Next Friend of K.W. v. S. Apartment Partners, LP*, 2020 WL 7356606, at *3 (S.D. Ga. Dec. 15, 2020) (Hall, C.J.).

The first factor, plaintiffs' purpose in seeking to join GPA, is simplified in this case because plaintiffs concede that their purpose is, at least in part, to defeat federal jurisdiction. Ports America's response notes that "[t]ellingly, Plaintiff's acknowledged their intention to destroy diversity jurisdiction by arguing in their prior reply brief: 'the reasons for adding GPA are not *solely* to destroy diversity, but *also* are rooted [in] the interests of a complete and thorough fact-finding analysis . . . .'" Doc. 42 at 7 (quoting doc. 34 at 12). Plaintiffs have modified their language in reply to Ports America's argument, but do not entirely disclaim their interest in defeating federal jurisdiction. *See* doc. 46 at 16 ("the reasons

for adding GPA are not *solely* to destroy diversity, but are rooted [in] the interests of a complete and thorough fact finding analysis while avoiding parallel state and federal actions." (emphasis added)).  As this Court recognized in *Butler*, where a plaintiff's intent to defeat federal jurisdiction is discernable, the first factor weighs against permitting the amendment.  *Butler*, 2020 WL 7356606, at * 3 (inferring plaintiff's intent from the timing and asserted basis for the proposed amendment). Similarly, here, the plaintiffs' concession, albeit *sotto voce*, that the proposed amendment is motivated, at least in part, by a desire to defeat diversity weighs against permitting the amendment.

Ports America contends that plaintiffs were dilatory in moving to amend because the information supporting their claims against GPA were available when the original complaint was filed.  *See* doc. 42 at 8 ("Plaintiffs seek to add new claims against a non-diverse defendant to this case on the basis of information known to them from the beginning of this suit . . . .").  Plaintiffs point to a toxicology report that "revealed the true extent of Middleton's intoxication," and deposition testimony regarding video evidence of Middleton's erratic driving, *see* doc. 46 at 17 (citing Sergeant Roger Carson's deposition testimony), and another

6

deponent who testified "that a witness smelled marijuana emanating from Middleton's truck," *id.*, as the basis for the proposed additional claims.   Plaintiffs contend that they moved to amend shortly after receiving that information.   *See* doc. 46 at 14 (stating that plaintiffs did not have knowledge of the facts "until just two days before sending the [required] *ante litem* notice" to GPA).

The standard for whether a plaintiff should have acted sooner is, necessarily, flexible.  However, courts have noted that *confirmation* of a claim against a non-diverse defendant by discovery does not preclude a determination that the plaintiff was dilatory.  *See Richards v. Lesaffre Yeast Corp*, 2007 WL 2274402, at *2 (M.D. Ala. Aug. 1, 2007) ("While a plaintiff may argue that discovery was necessary to confirm the proper identity of the resident defendant, a plaintiff's failure to name such a defendant when the suit was filed and before it was removed is dilatory if plaintiff could have ascertained the identity of the resident defendant without discovery." (citation omitted)); *see also, e.g., Osgood v. Discount Auto Parts, LLC*, 955 F. Supp. 2d 1352, 1356 (S.D. Fla. 2013) (noting that plaintiff "could have ascertained the identity" of the non-diverse defendant earlier).  It appears, therefore, that plaintiffs seeking to join a

non-diverse defendant cannot wait for *confirmation* of such a claim, but must take affirmative steps to identify and plead such claims at the inception of a case.

The Court cannot wholly agree with Ports America that plaintiffs were "dilatory" in moving to amend, but neither can it agree with plaintiffs that potential claims against GPA were completely unforeseeable. To be sure, plaintiffs identify facts learned during discovery which imply that Middleton was so intoxicated that it should have been apparent when he was admitted to the Port, that *strengthen* potential claims against GPA. However, Ports America is correct that the original complaint alleges facts that could have supported the same negligence and premises-based claims. *See* doc. 42 at 8 (citing doc. 1-1 at 8, ¶ 10 (alleging that Middleton "reeked" of alcohol at the time of the wreck)). While plaintiffs were not dilatory, it is not clear that the claim could not have been pleaded earlier. The second factor thus weighs in plaintiffs' favor, if only slightly.

The third factor requires the Court to consider whether the plaintiff will suffer a significant injury if the amendment is not allowed. Plaintiffs argue that they will suffer such an injury if they are forced to litigate

their claims against GPA in a separate action.  *See* doc. 37 at 7*;* doc. 46 at 10-11.  Ports America argues that plaintiffs would not be significantly injured precisely because they "remain free to pursue their claims against GPA in State Court, if they so choose."  Doc. 42 at 6.  Judge Hall confronted a strikingly similar situation in *Butler*, and concluded that "the possibility of an additional suit offers both a pro and a con to the joinder of [the non-diverse defendant] because having two lawsuits is inefficient but still offers a possibility of recovery for Plaintiffs.  This [third] factor therefore comes out more neutral . . . and ultimately towards permitting the joinder of [the non-diverse] defendant in light of judicial efficiency."  2020 WL 7356606, at *4 (S.D. Ga. Dec. 15, 2020).  That conclusion applies equally here.  The Court should conclude that the third factor weighs, albeit weakly, in favor of permitting the amendment.

The fourth factor, the balance of the equities, requires the Court to consider the defendant's interest in maintaining the federal forum.  *See Dever*, 755 F. App'x at 869; *see also Butler*, 2020 WL 7356606, at *4 (quoting *Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1282 (N.D. Ala. 2002)) (noting "the 'diverse defendant's right to choose between

a state or federal forum,'" " 'is the very purpose of the removal statutes.'").

Plaintiffs argue that the equities support amendment and remand

because this is at an early stage, they have already taken steps (*i.e.* they

have provided *ante litem* notice) to recover from GPA, and the claims

against GPA arise from "common facts" with the claims against

Middleton and Ports America.[3]   *See* doc. 37 at 7.   Plaintiffs also assert

that the extent of Mr. Hicks' injuries supports amendment, albeit without

any cited authority.   *See, e.g.*, doc. 46 at 16.   Defendants argue, on the

contrary, that the equities balance against plaintiffs' amendment

because their claims against GPA are futile.[4]   *See* doc. 42 at 10-17; *see*

---

[3]  Plaintiffs invocation of the "common facts" is somewhat perplexing.  On the one hand, if there were no "common facts," joinder would not seem permissible under Rule 20.  *See* Fed. R. Civ. P. 20(a)(2).  Such common facts would, therefore, seem like a precondition to a motion to amend, and, thus, irrelevant to the equities favoring or disfavoring amendment in the present circumstances.  The only case that plaintiffs cite in support of the relevance of "common facts," is one in which the only defendant did "not object to [the non-diverse defendant] being joined . . . ."  *Culpepper v. Hartford Life & Accident Ins. Co.*, 2020 WL 2200443, at * 2 (M.D. Ga. May 6, 2003); *see also* doc. 37 at 7.

[4]  The Court makes no findings concerning the merits of the parties' respective arguments.  It is not clear that Ports America is the proper party to assert sovereign immunity and public duty defenses on behalf of GPA.  *See* doc. 42 at 10-17.  Although the Court does not consider the merits of the parties' arguments, the existence of those arguments supports an inference that claims asserted against GPA would involve additional pre-discovery motions practice.

*also* doc. 48 at 3-5.  Plaintiffs vigorously dispute that argument.  *See* doc. 46 at 10-12.

The Court should conclude that the equities balance against permitting amendment.  While the Court appreciates that Hicks' injuries are significant, plaintiffs have cited no authority that significant injuries militate in favor of permitting a jurisdiction-destroying amendment.  By contrast, Ports America's interest in maintaining its choice of a federal forum clearly militates against permitting the amendment.  *See, e.g.,* *Smith*, 229 F. Supp. 2d at 1282.  Despite plaintiffs' argument that the amendment would not disrupt the proceeding of this case, the parties' arguments concerning futility augur that substantial motions practice is likely if amendment is allowed.  Finally, although there is a common set of facts underlying plaintiffs' claims against Middleton, and Ports America vicariously, and their potential claims against GPA, the issues are not identical.  *See, e.g.,* doc. 37-1 at 6-8 (including allegations concerning GPA's "policy and practice" concerning disallowing entry to impaired drivers, and GPA's knowledge of Middleton's alleged intoxication).  Defendants point out that amendment would require

11

considerable additional discovery.[5]  *See, e.g.,* doc. 48 at 3.  The burden of

that potentially duplicative discovery in this case should be considered in

light of the fact that Plaintiffs have an available forum to litigate their

claims against GPA, regardless of whether amendment is permitted here.

The specific circumstances of this case, and its present posture, all

suggest that the efficiency gains from resolving plaintiffs' claims in a

single action may be limited, if not *de minimis*, and the amendment

would necessarily deprive Ports America of its chosen forum.   The

equities, therefore, weigh substantially against permitting amendment.

The application of the *Dever* factors to the facts of this case does not

result in an overwhelming determination.   Plaintiffs concede that the

amendment is motivated, at least in part, by a desire to destroy subject

matter jurisdiction.  While they were not dilatory in seeking to join GPA,

it seems clear that those claims were not unforeseeable from the

---

[5]  Ports America has now filed a Motion for Summary Judgment on the grounds that
Middleton was not acting withing the course and scope of his employment at the time
of the wreck.  *See* doc 60-1 at 1 (brief in support of Motion for Summary Judgment).
Plaintiffs' deadline to respond to that motion has not expired.  *See, e.g.,* doc. 63
(Clerk's Notice calculating that plaintiffs' response is due on or before February 21,
2022).  The pendency of that motion supports the conclusion that discovery between
plaintiffs and Ports America has reached an advanced stage, even if it has not entirely
concluded.

inception of this case. Plaintiffs do not dispute that they have an available forum to pursue their claims against GPA, even if they are not permitted to amend here. Finally, permitting amendment would deprive Ports America of its right to choose a federal forum and would seem to result in significant revision of completed discovery. Ultimately, the factors weighing against amendment are more proximate and definite than the factors weighing in its favor. On balance, therefore, the Court should exercise its discretion and refuse the amendment.

## CONCLUSION

Plaintiffs' Amended Motion for Leave to File an Amended Complaint should be **DENIED**. Doc. 37. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>15th</u> day of February, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA